**Victor BONO et al., Plaintiffs,**

v.

**William SAXBE et al., Defendants.**

**Civ. No. 74–81–E.**

United States District Court,
E. D. Illinois.

Nov. 22, 1978.

G. Flint Taylor, Jr., Michael E. Deutsch, Ralph Hurvitz, Chicago, Ill., Arpiar Saunders, Concord, N.H., Harvey M. Grossman, Carbondale, Ill., Lee H. Tockman, Howard Eglit, Chicago, Ill., for plaintiffs.

James R. Burgess, Jr., U. S. Atty., by Frederick J. Hess, Asst. U. S. Atty., East St. Louis, Ill., for defendants.

## ORDER

FOREMAN, Chief Judge:

Before the Court are defendants' report and proposals, plaintiffs' objections thereto and defendants' motion for reconsideration.

On April 19, 1978, this Court found that the procedure for placement in the Control Unit at the United States Penitentiary, Marion, Illinois, and certain conditions of confinement therein were in violation of plaintiffs' constitutional rights. In order to implement this decision, the defendants were ordered to submit proposals relating to impartial, qualified decision makers, review of the initial decision, periodic review of the status of Control Unit inmates and

increased physical exercise. Pursuant to this order, the defendants submitted the present proposals. The plaintiffs object to those provisions of defendants' proposals that leave decision making solely under the control of the Bureau of Prison officials, those provisions that set forth subjective, as opposed to objective criteria for release from the control unit, and those provisions that suggest the amount of time allocated for exercise. Defendants have also requested the Court to reconsider its prior order that prohibits them from considering escape attempts when determining whether placement in the Control Unit is warranted.

■ Under the defendants' proposals, the decision to commit an inmate to the Marion Control Unit is solely in the hands of the Bureau of Prison officials. The plaintiffs contend that this suggested procedure ignores the Court's requirement that the decision maker be qualified and impartial. They argue that the Bureau of Prisons and all its employees are adversary to the interests of the inmates because of the problems inherent in the operation of a maximum security institution. They, therefore, urge the Court to adopt a decisional process wherein the decision maker is unconnected with the Bureau of Prisons or the Justice Department.

The Court has considered plaintiffs' argument but finds that such an intrusion into the operation and management of the federal prison system is unwarranted. Congress, in promulgating 18 U.S.C. § 4001, has authorized the Attorney General of the United States to manage and control the federal prison system. If this Court were to adopt the plaintiffs' proposal, it would in effect be substituting its own judgment in place of the judgment of the United States Congress. Such action is unwarranted on the record before the Court. Moreover, courts in other cases have rejected similar arguments. See *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Newman v. Alabama,* 559 F.2d 283 (5th Cir. 1977). Accordingly, this objection to defendants' proposal is rejected.

■ In determining an inmate's readiness for release from the control unit, the defendants have proposed a two tier process of periodic review by a Unit Team and an Executive Review Panel. Under the proposal, the Team and the Panel are directed to consider various subjective factors that relate to the inmate's adjustment in the control unit. The plaintiffs object to the subjective nature of this decisional process and suggest that the time an inmate is to spend in the control unit be correlated with specific objective criteria such as freedom from disciplinary infractions and participation in rehabilitative programs.

As a general philosophy, the Court finds much merit in plaintiffs' position. The Court would certainly agree that upon placement in the control unit, an inmate should be given an estimate of the time he will spend there. The Court, however, views plaintiffs' suggestions as a means to circumvent this Court's prior ruling that an indefinite stay in the control unit is constitutional. Adoption of plaintiffs' proposals would effectively tie the hands of the persons charged with the responsibility of operating the federal prison system. Prison administrators must be given sufficient latitude within which to perform their management function. If defendants provide certain guidelines within which to exercise their discretion, it is unnecessary to impose a rigid set of rules upon them. Accordingly, plaintiffs' objection to this portion of defendants' proposals is overruled.

The defendants have also proposed to increase the minimum amount of time an inmate is permitted to engage in a physical exercise from two (2) hours weekly to four (4) hours weekly. If an inmate desires to recreate with another inmate, he will be permitted to do so provided both inmates sign consent forms. Only two (2) inmates will be permitted to recreate together but the Industry Range may permit five (5) inmates to recreate at one time if all conditions are satisfactory. The plaintiffs object to these proposals claiming that too little time is provided for exercise. They also assert that exercise encompasses not only the traditional definition of physical activi-

ty but also the general definition of social interaction. They therefore urge that the inmates be provided a minimum of seven (7) hours per week of physical exercise outside their cells and seven (7) hours per week of physical exercise in outdoor areas for a total of fourteen (14) hours per week. They additionally suggest that the inmates on all ranges be permitted to exercise in groups of four (4).

Although the Court agrees that group exercise may be beneficial, the Court does not find that exercise in groups of four is constitutionally compelled. Persons are confined in the control unit because of a demonstrated inability to adjust to an open institutional setting. Marion Policy Statement MI7300 8A (dated May 30, 1975). In consideration of this preventive purpose and the administrative problems inherent in supervising group activity, the Court finds that limiting group exercise to groups of two (2) is sufficient. The Court, however, has considered the arguments of both parties in regard to the amount of time allocated for physical exercise and hereby finds that a minimum of four (4) hours weekly is ineffective to relieve the inmates of the constitutional deprivation as set forth in the April 19, 1978 order. The Court, therefore, orders that inmates in the Marion Control Unit be provided a minimum total of seven (7) hours per week for physical exercise in excess of the time out of cells for visits, psychological counseling, reviews, showers, hospital visits, telephone calls and special interviews with news media, Unit Manager, Case Manager, etc. This seven hour period includes physical activity on either indoor or outdoor areas.

Finally, defendants ask this Court to reconsider its prior ruling that they may not consider escape attempts when determining whether placement in the control unit is warranted. The Court has reconsidered its prior ruling on this issue, and has determined that it needs clarification. The Court adheres to its prior ruling that an attempted escape, viewed in isolation, is not the type of incident warranting placement in the control unit. Rather, it is the type of rule infraction which may be dealt with by the more traditional means of punitive segregation. On the other hand, an escape attempt may be of such nature, or when viewed cumulatively with an inmate's prior history, that consideration of the incident is warranted when determining whether or not the particular offender should be assigned to the control unit. Thus, defendants will be permitted to consider escape attempts when determining when an inmate should be assigned to the control unit. When so doing, however, defendants shall comply with other portions of this order dealing with specific procedural safeguards.

Accordingly, this Court hereby enjoins the defendants from placement of an inmate in the Control Unit without conducting a hearing held in compliance with the procedures set forth in the appendix to this order.

IT IS SO ORDERED.

## APPENDIX

A. *Referral Process* :

1. The sending institution will review the record of an inmate proposed for placement in the Marion Control Unit and determine that the criteria for placement in the Control Unit are probably met, and will make the initial recommendation to the Regional Office for placement in the Marion Control Unit.

2. The Institution's recommendation must be submitted to the Regional Director in the region where that institution is located.

3. The Regional Director shall designate a person in the Regional Office to review the referral and to conduct the necessary hearing. This person shall have the following qualifications:

(1) Correctional experience, including institutional work with inmates, processing of inmate disciplinary actions; significant institutional experience in observing and evaluating inmate adjustment, disruptive behavior and knowledge of the options available in the federal prison system for dealing with such conduct.

(2) Lack of former personal involvement in any disciplinary or adjustment matter with the inmate.

(3) Awareness of BOP policies and operations, including options available for placement of the inmate throughout the federal prison system and the criteria for placement in different institutions and in the Control Unit.

4. The hearing administrator will conduct a hearing for the inmate recommended for placement in the Control Unit. This hearing will occur at the recommending or sending institution. After review of all material related to the recommendation for placement in the Control Unit and hearing, he will render a written decision as to whether placement in the Control Unit is warranted. The procedures are as described in 3(b) below.

5. The Regional hearing administrator shall send his decision and supporting documentation to the Executive Review panel. This panel consists of the Regional Director, North Central Region and the Assistant Director, Correctional Programs of the Bureau of Prisons. Within fifteen (15) working days (unless for good cause there is a reason for delay, which shall be documented), the panel shall accept or deny the administrator's decision. This review decision, with reasons for the action taken upon denial, shall be communicated to the Warden, Marion, Illinois who in turn will notify the appropriate parties.

B. *Procedural Requirements* :

The hearing conducted by the Regional hearing administrator shall be conducted at the referring institution, as follows:

1. Advanced written notice of the hearing and a copy of these procedures and criteria for placement in the Control Unit will be provided the inmate at least 24 hours prior to the hearing, which advises the inmate of the specific acts or act or any other evidence, unless such evidence would likely endanger staff or others, for which he is recommended for the Control Unit.

2. An inmate will be permitted to have witnesses appear and to present documentary evidence, provided that calling the witnesses or disclosure of the documentary evidence would not jeopardize or threaten institutional security or individual safety, and further provided that the witnesses are available at the institution where the hearing is being conducted. The evidence must be material and relevant to the issue as to whether the inmate can and would function within the prison population without being or posing a threat to staff and others and the orderly operation of the institution. Evidence offered to reverse or repeal a prior finding of a disciplinary violation shall not be considered. Where a witness is not available within the institution, nor permitted to appear, the inmate may submit a written statement by that witness. The hearing administrator shall, upon the inmate's request, postpone the hearing to permit the obtaining of written statements.

Repetitive witnesses need not be called. Reasons for declining to permit a witness or documentation shall be documented. Staff who recommends placement in the Control Unit will not be required to appear.

3. An inmate at this hearing shall be provided the services of a full-time staff member to represent him if he so desires. The staff representative must be able to assist the inmate, and if the inmate desires, the representative shall contact witnesses and present favorable evidence at the hearing. The staff representative should be given adequate time to speak with the inmate and to interview available witnesses.

The inmate may select a staff representative. If the staff member is unavailable, the inmate can request a delay for availability of the staff member. If the staff member declines, the inmate may select another staff member, or request that the hearing be conducted without a staff representative. If an inmate is illiterate, a staff representative will be provided.

4. The administrator shall prepare a summary of the hearing and all information presented upon which his decision is based. The hearing administrator will include the specific reasons for his decision. The rea-

sons will include a detailed description of the act, or series of acts, or evidence on which the decision is based.

5. The inmate will be permitted to be present throughout the hearing except where institutional security would be jeopardized. The hearing may be conducted in the absence of the inmate when the inmate refuses to appear and he cannot be brought to the hearing without the use of force.

6. The inmate will be advised in writing of the decision by the hearing examiner. He will be provided the summary, decision, and reasons referred to in # 4 above, unless there is a determination made that release of information could pose a threat to individual safety, or institutional security, which limited information may be withheld.

7. The inmate shall be advised that the decision shall be submitted to the Executive panel for review. An appeal of the administrator's decision may be submitted to the Executive panel by the inmate, with supporting documentation and reasons if he desires within five (5) days after the hearing administrator's decision. The decision of the Executive panel may be appealed by utilization of a BP–11 with supporting documentation to the Bureau of Prisons.

C. *Periodic Reviews*:

a. Each inmate confined to the Control Unit will be reviewed by two means:

(1) A thirty-day review by the Unit Team.

(2) A sixty to ninety-day review by the Executive Review panel.

In (a), the Unit Team comprised of the Control Manager, Case Manager, number one officer, and the Education representative will review each inmate every thirty days to determine his Unit status, his adjustment and his readiness for release from the Unit. The Warden of USP, Marion will serve as the reviewing authority of these team actions at the institutional level.

In (b), the Executive Review panel will review each Control Unit inmate every 60–90 days to determine his readiness for release from the Unit. The Executive panel will consider the inmate's adjustment, accomplishments, and the Unit Team's recommendations in determining what action should be taken.

Upon admission to the Control Unit, the inmate will be given:

(1) the expected duration of his confinement in the Control Unit;

(2) a summary of the activities of the Control Unit;

(3) the expectations for his involvement in Control Unit activities;

(4) the criteria for release from the unit, and how those criteria specifically relate to this confinement period and any specific requirements in his individual case.

Release from the Unit can be made by the Unit Team or Executive Review panel. During an inmate's confinement in the Unit he will be evaluated daily by Unit Staff and more intensely at each thirty-day review by the Unit Team. The Unit Team of the thirty-day review, will have available the collected data of daily activity in conjunction with a personal interview. The nature of the act or acts that resulted in an inmate's placement in the Control Unit will be the primary factor in determining assignment of an initial status or specific number of months to be served in the Unit. Status assignments may range from one month to an indefinite number of months to be served. The inmate's status may be increased or decreased once assigned, depending on his behavior within the unit. Factors considered in determining an inmate's readiness for release from the Unit:

a. Personal grooming and cleanliness.

b. Quarters sanitation.

c. Relationship with other inmates and staff members, which demonstrates improvement in the type of disruptive behavior which was the basis for his placement in the Unit.

d. Satisfactory involvement in work and recreational activities assignments, as made.

e. Adherence to institution and Bureau policy.