Anthony THOMAS, Plaintiff,

v.

Anthony RAMOS, et al., Defendants.

No. 94 C 4080.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 21, 1996.

Anthony Thomas, Pontiac Correctional Center, Pontiac, IL, Pro Se.

Alan S. Mills, Uptown People's Law Center, Chicago, IL, for Anthony Thomas.

Diann Karen Marsalek, Illinois Attorney General's Office, Chicago, IL, Susan Takata O'Leary, Illinois Department of Corrections, Chicago, IL for A. Ramos, D.E. Essenpreis, M. Thompson, L. Gregory.

Diann Karen Marsalek, Illinois Attorney General's Office, Chicago, IL, for Y. Williams.

*MEMORANDUM OPINION AND ORDER*

ASPEN, Chief Judge:

Plaintiff Anthony Thomas brings this complaint under 42 U.S.C. § 1983 against five employees of the Stateville Correctional Center in Illinois, alleging that they deprived him of his constitutional rights during his incarceration at the facility. Presently before this court is the defendants' motion for summary judgment, and the plaintiff's motion to strike certain portions of the documents filed by the defendants in support of their motion. For the reasons set forth below, the motion to strike is granted in part and denied in part, and the motion for summary judgment is granted.

## I. Background [1]

At the outset, we address the plaintiff's motion to strike portions of the defendants' Local Rule 12(N)(3)(b) statement and reply memorandum in support of the motion for summary judgment. Specifically, the plaintiff argues that the defendants' denials of paragraphs 16–22 and 33–37 of its Local Rule 12(N) statement are inadequate because they do not contain citations to specific portions of the record. We agree with the plaintiff that several of these denials are insufficient under the Local Rules. Accordingly, so long as the plaintiff's assertions in these paragraphs are supported with specific citations to evidence, we will deem them admit-

---

1. The following factual discussion is gleaned from the parties' submissions pursuant to General Rules 12(M) and 12(N) of the United States District Court for the Northern District of Illinois ("Local Rule 12(M)" and "Local Rule 12(N)").

ted. *See* Local Rule 12(M), 12(N)(3); *Wienco, Inc. v. Katahn Assocs., Inc.,* 965 F.2d 565, 568 (7th Cir.1992). However, we decline to strike the contested portions of pages 4, 6, and 7 of the defendants' reply memorandum, since these statements are more properly construed as argument rather than factual assertions. Accordingly, the plaintiff's motion to strike is granted in part and denied in part.

At all times relevant to this case, Thomas was an inmate at Stateville serving a twelve year sentence for armed robbery.[2] On May 15, 1994, while other inmates were being escorted to the medical area of Stateville, Thomas decided to wander to another wing of the prison without obtaining permission. He was caught by Correctional Officer Dunlap, who claims that when he and three other officers approached Thomas and told him to return to his cell, Thomas threatened them and refused to follow their instructions. Thomas was immediately taken to segregation by one of the officers, Lieutenant Bagley, and later that day Dunlap wrote a disciplinary report against Thomas charging him with unauthorized movement, intimidation/threats, disobeying an order, and insolence.

Pursuant to Illinois Department of Corrections regulations, Thomas was given a hearing on May 20, 1994, before an Adjustment Committee chaired by Defendant David Essenpreis, who was also the casework supervisor of the segregation unit where Thomas was being held. At that hearing Thomas admitted to being in an area without authorization, but denied the allegations that he had threatened the officers. The plaintiff also requested a continuance of the hearing in order to give Bagley an opportunity to corroborate his story. The Adjustment Committee agreed to continue the hearing and returned Thomas to segregation under "Investigative Status."

On May 31, 1994, the Adjustment Committee reconvened, although this time Essenpreis and the other committee members from May 20 were not present. Rather, the May 31 Adjustment Committee was comprised of Defendants Margaret Thompson, Yolande Williams, and Leona Gregory. Thomas was not given notice of this second hearing, and did not appear before the Committee to tell his side of the story. After considering the written summary from the May 20 Adjustment Committee, and a written statement from Bagley confirming the accuracy of the disciplinary charge, the second Adjustment Committee found Thomas guilty of the infractions as charged. Thomas was sentenced to two months of commissary denial and a two month demotion to C-grade; however, the Adjustment Committee did not sentence the plaintiff to any time in segregation. Despite the absence of any sentence to disciplinary segregation, Thomas remained in segregation past May 31, 1994. Indeed, it is undisputed by the parties that, at the very earliest, Thomas was released from segregation on July 21, 1994—almost two months after the second Adjustment Committee ruled on the disciplinary charges against him.[3]

While in segregation, Thomas contends that he was placed in a significantly more restrictive environment than that endured by inmates in the general population. He claims that while in segregation he spent almost all of his time in a cell as wide as his arm-span and less than two times that distance in length, and was only allowed to see the medical staff visitors. Although Illinois Department of Corrections regulations require that inmates in segregation receive certain amenities, *see* 20 Ill.Admin.Code § 504.620, Thomas contends that the actual conditions in segregation are much different. For example, he claims that segregation inmates are precluded from participating in educational and work programs, as well as all other prison activities, and are prohibited from using the regular library, the day room, the telephones, or the gym. Although segregation inmates ostensibly possess law library privileges, Thomas contends that inmates actually wait for extended periods of time be-

---

2. Plaintiff is currently incarcerated at the Pontiac Correctional Center. Defs.' 12(M) ¶ 1.

3. Thomas maintains that he was not actually released from segregation until two days later, on July 23, 1994. Thomas Aff. ¶ 11.

fore being allowed to visit the law library, and even then direct access to the materials is prohibited. Instead, the segregation inmates are locked in small cages and have law books brought to them.[4] Although segregation inmates should be permitted to visit the yard for two hours each week, Thomas claims that during his more than two months in segregation he was never allowed out in the yard.[5]

Thomas claims that he began verbally complaining to guards in the segregation unit as soon as he became aware that his sentence did not contain a term of confinement in segregation. On June 7, 1994, Thomas filed a formal grievance with his counselor demanding that he be released from segregation. The counselor's written response on June 13, 1994 stated that the Committee was still investigating Dunlap's charges against him and that Thomas was still being detained in segregation on Investigative Status. Thomas maintains that because the May 31 Adjustment Committee had resolved the charges against him by that time, he believes that his counselor's supervisor, Essenpreis, must have incorrectly told him that Thomas was under Investigative Status. Thomas also claims that he repeatedly informed Anthony Ramos, the Superintendent of Segregation Unit I, that he should be released from segregation. He claims that these conversations occurred both as Ramos made his weekly rounds to the cells, and on at least one occasion in Ramos's office. Thomas maintains that neither Ramos nor his counselor did anything to clear up the problem, and that his release from segregation only occurred because of the efforts of a social worker.

While still in segregation Thomas filed this *pro se* complaint, although he subsequently retained counsel. His complaint names as defendants Margaret Thompson, Yolande Williams, and Leona Gregory, members of the May 31, 1994 Adjustment Committee, who he claims denied him due process at the hearing and failed to ensure that he was released from segregation after their ruling. The plaintiff also sues David Essenpreis, the Chairman of the May 20, 1994 Adjustment Committee and the casework supervisor of his segregation unit, claiming that he impeded the implementation of the sentence imposed by the May 31 Adjustment Committee. Finally, Thomas names Anthony Ramos, the superintendent of his segregation unit, for keeping him in segregation without any lawful justification. In addition, Thomas claims that Ramos is liable for failing to provide him with any yard time during his two month detention in the unit. The defendants now move for summary judgment, arguing that (1) the plaintiff received all the process he was due at the May 20 and May 31 Adjustment Committee hearings, (2) his extended detention in segregation was caused by no more than negligent conduct that cannot be found actionable under the Due Process Clause of the Fourteenth Amendment, (3) he received access to the yard while in segregation, (4) the defendants lack personal involvement in the alleged constitutional violations, and (5) they are entitled to qualified immunity.

## II. Summary Judgment Standard

■ Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). "Although we review the facts and inferences in the light most favorable to the nonmoving party, to avoid summary judgment that party must supply evidence sufficient to allow a jury to render a verdict in his favor." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir.1995) (citing *Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11).

---

**4.** For more on this issue, see *Walters v. Edgar,* 900 F.Supp. 197 (N.D.Ill.1995) (holding that "runner system" used to distribute law library materials to segregation inmates violates constitutional right of access to courts).

**5.** The defendants maintain that according to prison logs, Thomas was given four opportunities to exercise outside in the yard during his time in segregation, but that he refused each time. The plaintiff disputes this contention and argues that he never refused yard time, although he may have lost the opportunity to go on several occasions when he chose to visit the medical unit.

## III. Discussion

Simply stated, the plaintiff raises two claims in his complaint. First, he maintains that by not providing him with the proper procedures and keeping him in segregation without a valid sentence authorizing such punishment, the defendants denied him his rights under the Due Process Clause of the Fourteenth Amendment. Second, he contends that Defendant Ramos violated his Eighth and Fourteenth Amendment rights by denying him yard privileges during his entire two months in segregation.[6]

### A. Denial of Due Process

Thomas claims that the defendants denied him due process by (1) failing to give him advanced written notice of the May 20 Adjustment Committee hearing, (2) failing to call him before the May 31 Adjustment Committee, thereby preventing him from telling his side of the story and calling witnesses, and (3) keeping him in segregation without a valid imposition of such punishment.

 Thomas may only prevail on a § 1983 claim based on the Due Process Clause of the Fourteenth Amendment [7] if he can show that the defendants deprived him of a protected interest in his "life, liberty, or property" without giving him the required procedures. See Williams, 71 F.3d at 1248 (citing Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 982, 108 L.Ed.2d 100 (1990)). In this case, Thomas claims that his detention in segregation constituted a deprivation of "liberty" recognized by the Constitution. Until recently, Thomas would have had a decent argument, since prison regulations containing sufficiently mandatory language— such as the Illinois regulations involving disciplinary segregation—were deemed to cre-

ate constitutionally enforceable interests. See Gilbert v. Frazier, 931 F.2d 1581, 1582 (7th Cir.1991) (holding that Illinois prison regulations created liberty interest in staying out of segregation). However, since the instant motion for summary judgment was filed, the United States Supreme Court has dramatically altered the landscape of prisoner litigation. In Sandin v. Conner, —— U.S. ——, —— – ——, 115 S.Ct. 2293, 2300–02, 132 L.Ed.2d 418 (1995), five Justices of the Court held that a Hawaiian prisoner was not deprived of a liberty interest protected by the Constitution when he was placed in disciplinary segregation for thirty days.[8] The Court concluded that the Due Process Clause itself did not create a liberty interest in staying out of disciplinary segregation, and Hawaiian law did not create a protected liberty interest because segregation did not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at —— – ——, 115 S.Ct. at 2300–01. Consequently, because the inmate in Sandin was not denied his liberty, the State of Hawaii was under no obligation to provide him with the predeprivation procedures outlined in Wolff v. McDonnell, 418 U.S. 539, 563–572, 94 S.Ct. 2963, 2978–2982, 41 L.Ed.2d 935 (1974), and thus he had no § 1983 claim. —— U.S. at ——, 115 S.Ct. at 2302. After Sandin, mandatory state prison regulations will only create liberty interests if they involve limitations on freedom that, "while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek [v. Jones, 445 U.S. 480, 493, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980)] (transfer to mental hospital), and Washington [v. Harper, 494 U.S. 210, 221–222, 110 S.Ct. 1028, 1036–

---

6. The defendants contend that the plaintiff does not · raise an Eighth Amendment claim in his complaint. However, the Eighth Amendment was cited on page five of the plaintiff's pro se complaint, and page fifteen of his memorandum in opposition to the instant motion appears to challenge the lack of yard privileges under this provision of the Constitution. To be sure, such meager articulations of a legal theory come perilously close to waiver. Nonetheless, because we must construe Thomas's pro se complaint liberally, Haines v. Kerner, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), we

permit him to proceed with an Eighth Amendment claim.

7. "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1.

8. We note that the defendants only briefly mention Sandin on page three of their reply memorandum, and indeed, their discussion of the case suggests a misapprehension of its significance.

1037, 108 L.Ed.2d 178 (1990) ] (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." —— U.S. at ——, 115 S.Ct. at 2300.

Since coming down in June of 1995, *Sandin* has been the subject of extensive judicial discussion. *See Stone–Bey v. Barnes,* 913 F.Supp. 1226, 1232 n. 5 (N.D.Ind.1996) (collecting cases). Most importantly for our purposes, the Court of Appeals for the Seventh Circuit recently interpreted *Sandin* as precluding the § 1983 claim of a prisoner held in disciplinary segregation. In *Williams v. Ramos,* 71 F.3d 1246, 1249–50 (7th Cir.1995), a case bearing striking similarity to the instant matter,[9] the Seventh Circuit concluded that nineteen days in disciplinary segregation at Stateville did not constitute an "atypical, significant deprivation" sufficient to create a liberty interest for due process purposes. In *Williams,* as in our case, the plaintiff claimed that life in segregation was significantly more onerous than life in the general population.

> He says that he was locked in a closed-front cell twenty-four hours a day, he was not allowed to participate in activities available to the general population or non-segregated inmates housed in the same area, he was handcuffed whenever he left his cell, and he lacked much contact with other inmates or staff. We do not believe, however, that his catalogue of harms greatly exceeds what one could expect from prison life generally, as "lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, 'a retraction justified by the considerations underlying our penal system.'"

*Williams,* 71 F.3d at 1249 (quoting *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974)) (footnotes omitted); *cf. Crowder v. True,* 74 F.3d 812, 814–815 (7th Cir.1996).

■ However, despite the broad language in *Williams* and *Sandin* against liberty claims based on confinement in segregation,

we do not read these cases as necessarily dooming every inmate's due process claims. Rather, the conditions of segregation in each case must be evaluated to ascertain whether they rise to the sort of "atypical, significant deprivation" that *Sandin* considered critical. *See Whitford v. Boglino,* 63 F.3d 527, 533 (7th Cir.1995) (remanding for factual findings on whether conditions of segregation satisfied *Sandin* ); *Thomas v. Newkirk,* 905 F.Supp. 580, 583–84 (N.D.Ind.1995) (denying motion to dismiss all due process claims based on *Sandin* ). Here, Thomas, unlike the plaintiff in *Williams,* asserts that disciplinary segregation is more severe than the protective custody unit he often chooses over confinement in the general population. *Compare Williams,* 71 F.3d at 1249–50, *with* Pl.'s Mem. in Opp. to Summ.J. at 8–10. In addition, Thomas was kept in segregation for just over two months, while the inmate in *Williams* complained of only a nineteen day confinement, and the plaintiff in *Sandin* endured just thirty days in segregation.

Nonetheless, considering all of the conditions of Thomas's segregation, we do not believe that his situation justifies a different result than the one reached in *Williams* and *Sandin.* The plaintiff was detained for approximately seventy days, a relatively short period of time given that he was serving a twelve year sentence. Moreover, the actual conditions in segregation that he complains of are practically indistinguishable from those at issue in *Sandin* and *Williams.* *See* —— U.S. at ——, 115 S.Ct. at 2301; 71 F.3d at 1249–50. Prison life entails many restrictions on movement and activity; indeed, these unpleasantries are part of the punitive sanction associated with a criminal conviction. *See Jones v. North Carolina Prisoners Labor Union,* 433 U.S. 119, 125–26, 97 S.Ct. 2532, 2537–38, 53 L.Ed.2d 629 (1977). We conclude that under current law, Thomas's confinement in segregation did not constitute the type of "atypical, significant deprivation" of a prisoner's liberty that *Sandin* requires. *See Williams,* 71 F.3d at 1249–50; *Leslie v. Doyle,* 896 F.Supp. 771,

---

9. *Williams* involved the same Stateville segregation units at issue in this case, and also named

Anthony Ramos as a defendant.

773–75 (N.D.Ill.1995) (granting summary judgment against prisoner who claimed he was placed in segregation for no reason at all); *Oswalt v. Godinez,* 894 F.Supp. 1181, 1186 (N.D.Ill.1995) (dismissing claim by prisoner that he was held in segregation for almost sixty days on investigative status); *Kirsch v. Franklin,* 897 F.Supp. 1173, 1177–78 (E.D.Wis.1995) (finding no liberty interest created by placement in segregation for fifteen days); *Winfrey v. Ultsch,* 895 F.Supp. 229, 230–31 (E.D.Wis.1995) (dismissing claim by prisoner who was confined for twenty days in segregation with severe limitations on, among other things, visitation, telephone and television privileges, and access to mail). Accordingly, summary judgment is granted to the defendants on this claim.

### B. Denial of Yard Privileges

■ The plaintiff also contends that because he was not permitted to visit the yard during his entire time in segregation, his confinement was unconstitutional. At the outset, we observe that to the extent Thomas is claiming that his confinement violated the Due Process Clause, such a claim fails for the reasons discussed above. However, Thomas also appears to argue that keeping him in segregation without any yard time was a violation of his Eighth Amendment right to be free from the infliction of cruel and unusual punishments. Defendant Ramos does not directly challenge the merits of this claim; indeed, in paragraphs 23–30 of his Local Rule 12(N)(3)(b) response he contends that Thomas does not raise an Eighth Amendment claim in his complaint. *See supra,* note 6. Ramos does, however, contend that he is entitled to qualified immunity from suit. As the defendant has offered no challenge to the merits of this claim; we address directly the issue of qualified immunity.

■ Governmental officials performing discretionary functions are shielded from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus, Ramos is entitled to qualified immunity at this stage if (1) the facts, read in a light most favorable to the plaintiff, do not make out a constitutional violation, or (2) if the rights that were infringed were not "clearly established" at the time the alleged deprivation occurred. *See Sherman v. Four County Counseling Center,* 987 F.2d 397, 410 (7th Cir.1993); *Marshall v. Allen,* 984 F.2d 787, 793–94 (7th Cir.1993). The test for determining whether a right was "clearly established" at the time of the alleged violation is "whether the law was clear in relation to the specific facts confronting the public official when he acted." *Marshall,* 984 F.2d at 794 (quotations and citations omitted). In the instant case we need not decide whether Ramos's alleged conduct, if true, actually violated Thomas's Eighth Amendment rights. Rather, our review the law indicates that the right to outdoor exercise when confined in segregation for seventy days was not clearly established in the summer of 1994.

■ We begin with the unassailable assertion that, absent a serious security risk, the Eighth Amendment would not permit prison officials to deny *all* exercise to a prisoner. *Davenport v. DeRobertis,* 844 F.2d 1310, 1314–16 (7th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). However, as the Seventh Circuit recently observed in dicta,

cases that purport to recognize a right to *outdoor* exercise, such as *Allen v. Sakai,* 40 F.3d 1001, 1003–04 (1994), amended, 48 F.3d 1082 (9th Cir.1995), and *Spain v. Procunier,* [600 F.2d 189, 200 (9th Cir. 1979)], involve special circumstances, such as that the prisoners were confined to their cells almost 24 hours a day and were not offered alternative indoor exercise facilities (*Allen*), or the only alternative offered to the prisoners was exercise in the corridor outside their cells rather than in an indoor exercise facility and the lack of outdoor exercise was merely one of a number of circumstances that in the aggregate constituted the infliction of cruel and unusual punishment.

*Anderson v. Romero,* 72 F.3d 518, 528 (7th Cir.1995). Thus, it has been held by one

court in this district that an eighty-five day lock-down ·period with no outdoor exercise was constitutionally permissible where inmates were permitted to leave their cells on occasion, use the day room, and move about the prison. *Stewart v. McGinnis,* 800 F.Supp. 604, 615–16 (N.D.Ill.1992), *aff'd,* 5 F.3d 1031 (7th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994). Similarly, *Caldwell v. Miller,* 790 F.2d 589, 600–01 (7th Cir.1986), held that confinement for twenty-three hours a day in a cell, with only one hour of indoor exercise, for a period of seven months, was not unconstitutional.

Viewing the facts in a light most favorable to Thomas, during his approximately seventy days in segregation he was not permitted to exercise outside in the yard. However, there is no evidence to contradict the defendant's contention that for approximately 30 days between May 15 and July 23, Thomas's cellhouse was on lock-down and all inmates were prohibited from using the yard facilities. Ramos Aff. ¶ 5. Thomas does not maintain that he was precluded from exercising in his cell, or during his visits to the medical unit, the law library, or the visitation area. While we certainly do not condone the sort of treatment alleged to have occurred in this instance, we also do not believe—given the state of the law in 1994—that such conditions violated "clearly established" constitutional rights. *See Rodgers v. Jabe,* 43 F.3d 1082, 1086–89 (6th Cir.1995) (concluding that severe outdoor exercise limitations during prisoner's more than six months in segregation between 1991–92 did not violate clearly established constitutional rights). Even if the conditions of segregation were sufficiently serious, and Ramos acted with the requisite intent to implicate the Eighth Amendment, *see Farmer v. Brennan,* — U.S. ——, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994), we hold that the defendant is entitled to qualified immunity on this claim. Accordingly, his motion for summary judgment is granted.

## IV. Conclusion

For the reasons set forth above, the plaintiff's motion to strike is granted in part and denied in part, and the defendants' motion for summary judgment is granted. It is so ordered.