**McNeal WATTS, Plaintiff,**

v.

**Anthony RAMOS, Defendant.**

No. 95 C 3296.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 1, 1996.

McNeal Watts, Joliet, IL, pro se.

Thomas H. Morsch, Jason R. Coyle, Sidley & Austin, Chicago, IL, for plaintiff.

David S. Rodriguez, Illinois Attorney General's Office, Chicago, IL, Susan Takata O'Leary, Illinois Department of Corrections, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff McNeal Watts filed a complaint *in forma pauperis* against defendant Anthony Ramos under the Civil Rights Act of 1871, 42 U.S.C. § 1983. Watts, an inmate at Stateville Correctional Center in Joliet, Illinois, claims that Ramos, who was then managing the prison's segregation unit, violated Watts' Eighth Amendment rights by depriving him of all recreation time for over a year, from March 6, 1995 through March 9, 1996. Watts seeks compensatory and punitive damages, as well as injunctive and declaratory relief. Pending before the Court is Ramos' motion for summary judgment based on issue preclusion, absolute immunity and qualified immunity. The motion is denied in all aspects except with regard to absolute immunity, which protects Ramos from liability in his official capacity only.

### RELEVANT FACTS

As required by *Lewis v. Faulkner*, 689 F.2d 100, 101–02 (7th Cir.1982), Ramos notified Watts that, pursuant to Fed. R. Civ. P. 56(e), factual assertions in Ramos' evidentiary materials will be taken as true unless Watts submits his own evidentiary material contradicting the assertion. Ramos submitted a Local Rule 12(M) statement of uncontested facts.[1] However, Watts failed to submit a Local Rule 12(N) statement responding to Ramos' statement of facts.[2] Therefore, Ramos' statement of facts is deemed admitted. See Local Rule 12(M) and 12(N)(3)(b) (all properly supported material facts set forth in either party's statement are deemed admitted unless properly controverted); *see also Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir.1994) (same). Because

---

1. Local General Rule 12(M)(3) requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue." UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS LOCAL GENERAL RULE ("Local Rule") 12(M)(3). The movant's statement must contain "specific references to affidavits, parts of the record, and other ... materials relied upon to support the facts set forth." *Id.*

2. Local Rule 12(N)(3)(a) requires the non-moving party to file a concise response to the movant's statement including, in the case of any disagreement, specific references to supporting materials.

Watts is a pro se plaintiff and because both parties have made only legal, rather than factual, arguments, however, Watts' failure to comply with Local Rule 12(N) is not in itself fatal. The following recitation of facts is drawn from Ramos' Local Rule 12(M) statement and its exhibits.

Plaintiff Watts is currently serving a thirty-one year sentence in the custody of the Illinois Department of Corrections ("IDOC"). At all times relevant to this action Watts was an inmate at Stateville Correctional Center in Joliet, Illinois. On January 19, 1995, Watts violated several prison rules. He assaulted two correctional officers while he was being taken to the Health Care Unit ("HCU") and later set a blanket and a mattress on fire in the HCU. Watts apparently claimed that he "accidentally" assaulted the first officer, that he was blind and confused from pepper gas (presumably used to subdue him) when he assaulted the second officer, and that he inadvertently set the blanket and mattress on fire when he dropped a lit cigarette. Def.'s Exs. A–6 to A–16.

On January 26 and 27, 1995, Watts was found guilty of all four violations (two counts of assault and two counts of arson) by the Stateville Adjustment Committee. His sentence from the Committee included a total of two years in "I–House," Stateville's segregation unit, as well as the revocation of statutory good time credits, demotion to C–Grade, denial of commissary and audio/visual privileges, and restitution. Watts does not contest the findings or the sentencing of the Committee.

Defendant Ramos was the manager of I–House when Watts was assigned to segregation. As such, Ramos was a designee of the Warden and had the authority to impose recreation restrictions on I–House inmates

under certain circumstances. Although most restrictions are based on the inmate's behavior while in segregation, IDOC's Administrative Directive 05.03.1–10A ("the Directive") allowed Ramos to place a 90–day restriction on any inmate in I–House who had been found guilty of, among other things, assault or arson, whether those acts were committed before or after the inmate entered segregation.[3] Def.'s Ex. B–2. Ramos imposed upon Watts four consecutive 90–day restrictions, one for each infraction committed on January 19. Added together, the restrictions denied Watts recreation from March 6, 1995 through March 9, 1996. Watts claims that he suffered from stress and sleeplessness as a result of the restrictions imposed by Ramos, against whom he seeks damages and declaratory and injunctive relief.

## LEGAL STANDARDS

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view all evidence in the light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.1987), and draw all inferences in the nonmovant's favor. *Santiago v. Lane,* 894 F.2d 218, 221 (7th Cir.1990). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Flip*

---

3. The Directive states, in relevant part:

Recreational opportunities for inmates under segregation status ... may be restricted as determined by the Chief Administrative Officer or his designee in accordance with the following: 1) Inmates who are found guilty by the Adjustment Committee of assault [or arson] ... may be restricted from recreational opportunities for up to ninety days for the first offense. The second and subsequent offenses may result in a restriction from recreational opportunities for up to ninety days and/or indefinite place-

ment on limited recreation [one hour per week].

Def.'s Ex. B–2. The Court notes that the language of the Directive regarding the appropriate punishment for "[t]he second and subsequent offenses" is somewhat ambiguous. It could be read to state either that, for the second and all subsequent offenses, only one additional 90–day restriction is allowable, or that, for the second and for each subsequent offense, an additional 90–day restriction is allowable.

*Side Prods., Inc. v. Jam Prods., Ltd.,* 843 F.2d 1024, 1032 (7th Cir.1988).

In determining whether a genuine issue exists, the court "must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513. In making its determination, the court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge when deciding a motion for summary judgment. *Id.* at 255, 106 S.Ct. at 2513–14.

## ANALYSIS

### I. ISSUE PRECLUSION

■ Ramos' first contention is that he is entitled to summary judgment on the ground of issue preclusion. Ramos relies on *Davenport v. DeRobertis,* a class action suit brought by Stateville segregation inmates[4] that involved the amount of out-of-cell recreation afforded such inmates as a matter of segregation policy. *See Davenport v. DeRobertis,* 653 F.Supp. 649 (N.D.Ill.1987), *aff'd,* 844 F.2d 1310 (7th Cir.1988). After hearing extensive testimony concerning the mental and physical effects of "prolonged idleness and isolation," the jury found that Stateville's practice of allowing segregation inmates only one hour of out-of-cell recreation per week constituted cruel and unusual punishment. *Id.* at 655–57. The court issued an injunction requiring Stateville to increase out-of-cell recreation time from one hour to five hours per week. *Id.* at 664. The injunction stated, however, that "reasonable exceptions" to the five hour minimum could be made for certain fractious inmates. *Id.* Subject to this exception, the court approved the Directive, which set forth procedures for recreation restrictions that had been agreed upon by the parties. The same Directive remains in effect today, and provides the set of rules

under which Ramos imposed 360 days without recreation on Watts. Ramos claims that the reasonable exception for fractious inmates allowed by the court's injunction in *Davenport,* coupled with that court's approval of the Directive, preclude any segregation inmate from challenging actions taken under the Directive. This Court disagrees.

■ An issue is precluded, or barred from further adjudication, when: (1) the same issue was involved in a prior judicial proceeding, (2) the issue actually was litigated, (3) the issue was resolved, and (4) the issue's determination was necessary to the judgment in the prior proceeding. *See Bailey v. Andrews,* 811 F.2d 366, 369 (7th Cir.1987). Courts are reluctant to apply the doctrine when the defendant claims that a class action suit challenging general guidelines (such as the one in *Davenport* ) should preclude an individual claim challenging the application of those guidelines (such as Watts' claim). *See Cooper v. Federal Reserve Bank,* 467 U.S. 867, 876, 104 S.Ct. 2794, 2799–800, 81 L.Ed.2d 718 (1984); *Hiser v. Franklin,* 94 F.3d 1287, 1290–91 (9th Cir.1996); *Cameron v. Tomes,* 990 F.2d 14, 18 (1st Cir.1993). In the present case, Ramos fails to convince the Court that this reluctance should be overcome. Although Ramos arguably satisfies the first element (the prior proceeding involved the same issue), he clearly fails to satisfy the remaining three elements of the test, and indeed did not even address the last element. The plaintiffs in *Davenport* challenged a one hour per week recreation policy. None of them, so far as the record shows, were subjected to any special restrictions beyond this one hour guideline. The issue of further restrictions was addressed tangentially in the court's order for injunctive relief, but the issue of special, individualized restrictions was not litigated, was not resolved beyond the reasonable exception standard in the injunction, and was in no way necessary to the court's judgment.[5]

4. The class included "all present and future Stateville inmates confined to Stateville segregation for 90 or more consecutive days." *Davenport v. DeRobertis,* 653 F.Supp. 649, 651 (N.D.Ill. 1987).

5. The Seventh Circuit, in affirming *Davenport,* clearly did not anticipate the preclusion of claims challenging the reasonableness of special restrictions allowed by the *Davenport* exception in individual cases. Judge Posner noted that it was more or less "unavoidable that the exception

Likewise, the subsequent Directive was no more than an agreement between the parties that generally conformed to the court's injunction and settled the issues *between them.* The issue of special restrictions for fractious inmates, as noted above, was not one of the originally litigated issues. Therefore, Ramos cannot use the terms of the Directive to preclude Watts from claiming that its application to him in this case violated the Eighth Amendment. To say otherwise would be to endorse the unfettered discretion of officials in imposing continuous consecutive restrictions on fractious inmates. Such an endorsement would nullify the *Davenport* requirement that special restrictions be "reasonable," something Judge Hart certainly never intended to accomplish in his one-paragraph approval of the Directive.[6] As the *Davenport* case did not fully litigate and resolve the issue of special restrictions, especially as applied in this case, Watts is not precluded from bringing his claim.

## II. ABSOLUTE IMMUNITY

■■■ Ramos' second contention is that, under the Eleventh Amendment, he is immune from damages for claims brought against him in his official capacity. Suits in federal court against states for money damages are barred by the Eleventh Amendment. *Shockley v. Jones,* 823 F.2d 1068, 1070 (7th Cir.1987). It is well established that "[a] suit for damages against a state official in his or her official capacity is a suit against the state for Eleventh Amendment purposes." *Id.; see Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986); *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Knox v. McGinnis,* 998 F.2d 1405, 1412 (7th Cir.1993); *Scott v. O'Grady,* 975 F.2d 366, 369 (7th Cir.1992). Illinois has not consented to be sued in federal court for the actions of IDOC officials.

See *Knox,* 998 F.2d at 1412; *Davenport,* 653 F.Supp. at 662. Watts' action for damages against Ramos in his official capacity is barred by the Eleventh Amendment.

## III. QUALIFIED IMMUNITY

■■■ Ramos' final contention is that, under the doctrine of qualified immunity, he is also immune from claims against him in his individual capacity. Qualified immunity will shield a defendant's actions unless the right allegedly violated was "clearly established in a sufficiently particularized sense at the time of the actions at issue." *Knox,* 998 F.2d at 1409 (quoting *Hall v. Ryan,* 957 F.2d 402, 404 (7th Cir.1992)). The plaintiff bears the burden of "demonstrating that the infringed constitutional right was 'clearly established' at the time of the violation." *Barichello v. McDonald,* 98 F.3d 948, 952 (7th Cir.1996).

Ever since *French v. Owens,* 777 F.2d 1250 (7th Cir.1985), the Seventh Circuit has recognized that "[l]ack of exercise may certainly rise to a constitutional violation. Where movement is denied and muscles are allowed to atrophy, the health of the individual is threatened and the state's constitutional obligation is compromised." *Id.* at 1255. Both the AMERICAN CORRECTIONAL ASSOCIATION, STANDARDS FOR ADULT CORRECTIONAL INSTITUTIONS, Std. 3–4258, at 84 (3d ed., 1990) and the AMERICAN MEDICAL ASSOCIATION, STANDARDS FOR HEALTH SERVICES IN PRISONS, Std. 161, at 31 (1979) prescribe at least five hours of out-of-cell exercise per week, and courts in this Circuit continue to recognize this goal. *See Jamison–Bey v. Thieret,* 867 F.2d 1046, 1048 (7th Cir.1989) (reversing district court's grant of summary judgment to defendant for a claim that prison conditions violated the Eighth Amendment; expressing specific concern that the magistrate never mentioned plaintiff's claim "that he was denied exercise five times a week [and that] he was subjected

---

may itself engender litigation by inmates claiming that the defendants are misapplying it." 844 F.2d at 1315. Although Watts never uses the legal expression "as applied," it is clear from his complaint that he does not challenge the facial legitimacy of the exception or even of the restrictions allowed by the Directive. Rather, he challenges the constitutionality of Ramos'·use of restrictions against him.

6. The Court notes that, to be placed in segregation at all, an inmate is usually "fractious." Nothing in the record suggests that Watts' infractions, serious as they were, created any greater security risk than that presented by the "average" inmate in segregation.

to exercise restrictions over and above those imposed as a condition of segregation"); *Preston v. Thompson*, 589 F.2d 300, 303 (7th Cir.1978) (district court not clearly in error when it broke Pontiac's "lockdown," four months after a riot, and granted prisoners one hour per day of yard recreation); *Davenport*, 653 F.Supp. at 654–56, 664 (granting segregation inmates at Stateville five hours of exercise per week); *Lightfoot v. Walker*, 486 F.Supp. 504, 511 (S.D.Ill.1980) ("one shower and one hour of exercise per week ... is not a medically acceptable frequency or duration of showers or exercise; it promotes deterioration of inmates physically."); *Bono v. Saxbe*, 462 F.Supp. 146, 149 (E.D.Ill. 1978) (four hours of exercise for inmates in the Marion Control Unit were constitutionally inadequate; inmates must "be provided a minimum of seven (7) hours per week for physical exercise"), *aff'd in part and remanded in part on other grounds*, 620 F.2d 609, 614 (7th Cir.1980).

■ This five-hour per week minimum is not required when the deprivation is short-term or when the inmate's disciplinary record makes it reasonable to restrict him based on the prison's interest in order and safety. *See Henderson v. Lane*, 979 F.2d 466, 468 (7th Cir.1992) (one hour of recreation per week was not clearly unconstitutional for an inmate in Illinois' "circuit rider" program who was "a fractious and predatory inmate who refuse[d] to conform to the rules of the prison system" and who had been "disciplined on numerous occasions for assaultive behavior 'which ha[d] not ceased despite all efforts of the prison system'"); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir.1988) (a "short-term" denial of outdoor recreation for twenty-eight days, when it was believed that the prisoner was in danger, did not violate the constitution); *Armstrong v. Lane*, 771 F.Supp. 943, 947 (C.D.Ill.1991) (one hour of recreation per week in the "tightly-controlled [circuit rider] program" did not violate plaintiff's rights where plaintiff was classified as an escape risk, had been "recognized from the outset of his incarceration as an inmate requiring heightened security measures," and had "repeatedly stated his willingness to kill any perceived enemies"); *Davenport*, 653 F.Supp. at 664 ("if a segregation inmate violates prison rules during his exercise or shower period, he may be denied the exercise or shower rights ... for a reasonable period of time ... [and] other reasonable exceptions ... may be created pursuant to regulations approved by this court."). These cases limn this Circuit's definitions of what deprivations are "short-term" or when a longer-term restriction is "reasonable" in light of safety concerns.

■ Although the Seventh Circuit has not decided any bright-line test for this issue, the Court can find no confusion in the case law regarding whether *some* out-of-cell recreation time is necessary under the Eighth Amendment. *See Anderson v. Romero*, 72 F.3d 518, 527 (7th Cir.1995) ("[t]o deny a prisoner all opportunity for exercise outside his cell would ... violate the Eighth Amendment unless the prisoner posed an acute security risk if allowed out of his cell for even a short time"); *Henderson*, 979 F.2d at 469 ("there is no 'clearly established' right to *more* than one hour of exercise per week" for dangerous inmate) (emphasis added). The only cases finding that officials may restrict recreation altogether are those involving relatively brief periods of isolation. *See, e.g., Harris*, 839 F.2d at 1236 (twenty-eight days). In this case, Watts' year-long restriction cannot be deemed "short-term." As the Seventh Circuit has noted, it "seems pretty obvious, that isolating a human being from other human beings year after year or even month after month can cause substantial psychological damage, even if the isolation is not total." *Davenport*, 844 F.2d at 1313.

Nevertheless, Ramos argues, again relying on *Davenport* and the approved Directive, that there is no "clearly established" right to any out-of-cell recreation for prisoners who break certain rules. In reviewing the case law existing at the time of Ramos' alleged Eighth Amendment violation, the Court concludes that, to the contrary, the right to some recreation over a one year time period was clearly established.

■ In evaluating whether a right was "clearly established" at the time of the alleged violation, the Seventh Circuit teaches that "the very action in question need not

have previously been held unlawful" for the right to be clearly established. *Cleveland–Perdue v. Brutsche,* 881 F.2d 427, 430 (7th Cir.1989). Furthermore, an official may be liable for civil rights violations even when there is no controlling case in his or her jurisdiction, if there is sufficient law on point elsewhere:

> The presence of a controlling precedent is not ... a *sine qua non* of a finding that a particular right has been clearly established.... In the absence of a controlling precedent we look to all relevant caselaw in an effort to determine whether at the time of the alleged acts a sufficient consensus had been reached indicating that the official's conduct was unlawful. To state the proposition in another way, we seek to determine whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by controlling precedent was merely a question of time. This approach makes eminent sense for it precludes an official from escaping liability for unlawful conduct due to the fortuity that a court in a particular jurisdiction had not yet had the opportunity to address the issue.

*Id.* at 431. *See also Osolinski v. Kane,* 92 F.3d 934, 936 (9th Cir.1996) ("Absent binding precedent, we look to all available decisional law, including the law of other circuits and district courts, to determine whether the right was clearly established.").

When looking outside of the Seventh Circuit, "we are impressed by the number of decisions that hold or suggest that a failure to provide inmates (confined for more than a very short period[) ] with the opportunity for at least five hours a week of exercise outside the cell raises serious constitutional questions." *Davenport,* 844 F.2d at 1315. *See Allen v. Sakai,* 48 F.3d 1082, 1087–88 (9th Cir.1994) (denying qualified immunity where fractious inmate was allowed only forty-five minutes of recreation per day); *Ruiz v. Estelle,* 679 F.2d 1115, 1151–52 (5th Cir.1982) (summary judgment was "clearly improper" where plaintiff alleged a deprivation of recreation for 46 days with no penological justification); *Campbell v. Cauthron,* 623 F.2d 503, 507 (8th Cir.1980) (overcrowding and lack of

exercise constituted an Eighth Amendment violation; each inmate confined to his cell for more than sixteen hours per day must ordinarily be given the opportunity to exercise for at least one hour per day outside the cell); *Spain v. Procunier,* 600 F.2d 189, 199–200 (9th Cir.1979) (prisoners who had killed three officials and two inmates in an escape attempt were nevertheless entitled to five hours of recreation per week during their long-term stay in segregation); *Sweet v. South Carolina Dep't of Corrections,* 529 F.2d 854, 865–66 (4th Cir.1975) (limiting an "over-loud and contentious" maximum security inmate to two hours of recreation per week may violate the Eighth Amendment).

The Court is not unmindful of the fact that some recent decisions of this District have granted qualified immunity to defendant Ramos on issues involving recreational restrictions. These cases are distinguishable in several respects from the case before us, however, including, most importantly, the length of time involved. *See Thomas v. Ramos,* 918 F.Supp. 228 (N.D.Ill.1996) (30–day general lock-down plus additional 40–day restriction); *Morissette v. Ramos,* No. 94 C 3426, 1996 WL 521170, 1996 U.S. Dist. LEXIS 13057 (N.D.Ill. Sept. 9, 1996) (63–day restriction); *Pritchett v. Godinez,* No. 94 C 5724, 1996 WL 164396, 1996 U.S. Dist. LEXIS 4167 (N.D.Ill. Mar. 29, 1996) (90–day restriction). Because these decisions involve shorter restriction periods, they are more easily distinguished than Watts' claim from the case law discussed above, arguably leaving the constitutional violation in those decisions less clearly established. By contrast, nothing in the cases reviewed above from this Circuit and elsewhere condones the deprivation of all recreation for over a year, as occurred here.

Moreover, the *Morissette* and *Thomas* decisions reflect confusion over how much indoor out-of-cell exercise the inmate plaintiffs received as part of their daily prison routines. See *Morissette,* 1996 WL 521170 at 2–4 1996 U.S. Dist. LEXIS at *7–*9; *Thomas,* 918 F.Supp. at 235. In the present case, by contrast, Magistrate Judge Bobrick explicitly recognized that Watts' only opportunity to leave his cell was to shower twice a week (ten

to thirteen feet away from his cell). *See Watts v. Ramos,* No. 95 C 3296, 1995 U.S. Dist. LEXIS 12922 at *12 (N.D.Ill. Sept. 1, 1995). Although Ramos argues that Watts has enough room to exercise within his cell, such exercise does not negate the possibility of an Eighth Amendment violation. As the Seventh Circuit noted in *Davenport:*

> Of course, as the defendants argue, an inmate can preserve his cardiovascular fitness and overall muscle tone by running in place or by engaging in other forms of exercise that are feasible without leaving the cell; but this misses the point. The opportunity to exercise or even just to stand around, outside, in the company of other prisoners, is the inmate's principal break from what otherwise is solitary confinement except for his limited opportunities to visit other parts of the prison on specific and tightly supervised missions.

*Davenport,* 844 F.2d at 1314.

In *Pritchett,* the court granted qualified immunity to Ramos and his co-defendant after finding that one ninety-day recreation restriction for a fractious inmate was reasonably within the *Davenport* exception. *See Pritchett,* 1996 WL 164396 at 4–51996 U.S. Dist. LEXIS at *12–*13. In the present case, the Court is reluctant to extend the *Davenport* exception to cover four consecutive ninety-day restrictions.

The final case the Court has considered is *Rhoden v. Ramos,* No. 95 C 4206, 1996 WL 284945, 1996 U.S. Dist. LEXIS 7031 (N.D.Ill. May 22, 1996) . Although the court in that case did not discuss qualified immunity, it denied Ramos' motions to dismiss and for summary judgment where the recreation restrictions lasted over one year. *See Rhoden,* 1996 WL 284945 at 3–41996 U.S. Dist. LEXIS at *10–*11. Because *Rhoden* is factually similar to the present case, and because the other cases are distinguishable in terms of the length of the restrictions and on other grounds, the Court believes that its present decision is comfortably within the ambit of this Circuit's precedents.

While the Seventh Circuit has determined that *five hours of recreation per week is not* "always and everywhere the constitutional minimum," the clear message of existing case law, both in the Seventh Circuit and elsewhere, is that at least *some* recreational opportunity must be afforded to prisoners who are segregated from the general prison population for a long period of time. *See Davenport,* 844 F.2d at 1315–16. Here, however, Ramos imposed an absolute recreational restriction on Watts for over a year. The Court finds that he should reasonably have known that such a restriction could violate the Eighth Amendment. The issue, then, is whether the "totality of the conditions of [Watts'] confinement" constituted cruel and unusual punishment. *See Davenport,* 653 F.Supp. at 662. This requires a balancing of factors such as the length of time Watts spent in segregation, the amount of time he was allowed out of his cell (to shower, for example), and the actual threat he posed to prison order and safety as a result of his January 19 violations.[7] The Court believes that this is the kind of fact-specific analysis that only a trial can resolve. Ramos' request for qualified immunity is denied.

## CONCLUSION

The Court grants in part and denies in part the motion for summary judgment. Watts' claim for damages based on Ramos' actions in his official capacity is dismissed because such a claim is barred by the immunity granted state officials pursuant to the Eleventh Amendment. All other aspects of Ramos' motion for summary judgment are denied. In order to adequately insure that Watts will be prepared to proceed to trial, the Court hereby appoints Thomas H. Morsch of Sidley & Austin to represent Mr. Watts. A status hearing will be held in open court on December 4, 1996 at 9:00 a.m. to set an appropriate trial date.

---

**7.** While not minimizing in any way the seriousness of Watts' violations on the day of January 19, 1995, the Court notes that the present record shows no evidence of any prior or subsequent history of such behavior, of any yard-related violations, or of any infractions while in segregation. In short, at this point there is no evidence of factors indicating that Watts presented a long-standing or particularly imperative threat to safety and order.