James E. WILLIAMS, Plaintiff–
Appellant,

v.

Anthony RAMOS, Theopolas Smith, and
Robert Griffen, Defendants–
Appellees.

No. 95–1106.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 9, 1995.[*]

Decided Nov. 13, 1995.

Opinion Published Dec. 7, 1995.[**]

[*] After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that the parties could file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record. Additionally, appellant's motion to correct error in that statement's caption is denied as moot.

[**] Pursuant to Circuit Rule 53, this opinion was originally issued as an unpublished order on November 13, 1995. The court, upon request, issues this decision as an opinion.

James E. Williams, pro se.

Jessie Wang–Grimm, Office of the Attorney General, Chicago, IL, for Anthony Ramos, Theopolas Smith, Robert Griffen.

Before CUMMINGS, KANNE, and ROVNER, Circuit Judges.

PER CURIAM.

James Earl Williams filed suit for due process and Eighth Amendment violations

against officials at Stateville Correctional Center in Joliet, Illinois.[1] The district court granted summary judgment to the defendants on Williams's due process claim and dismissed his Eighth Amendment claim. Williams appeals. We affirm.

## I. Due Process

■■■ We review a district court's grant of summary judgment de novo. *Smith v. Shawnee Library System*, 60 F.3d 317, 320 (7th Cir.1995). Summary judgment is appropriate when the district court determines from the pleadings, affidavits, and other submissions that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Although we review all facts and inferences in the light most favorable to the nonmoving party, to avoid summary judgment that party must supply evidence sufficient to allow a jury to render a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

Williams contends that his due process rights were violated when he was held in disciplinary segregation for nineteen days longer than the maximum punishment period. The defendants state that Williams was not in disciplinary segregation; rather, he was in the Segregation Unit either voluntarily or under administrative segregation. We conclude that the question need not be resolved because, in this case, even if Williams was in segregation for disciplinary reasons the district court's grant of summary judgment should be affirmed.

There is some dispute about the exact sequence of events. Williams was placed in segregation after he refused his cell assignment and remained there voluntarily until September 10, 1993. The defendants claim that on September 10 Williams again refused to transfer out of the Segregation Unit; Williams says that he was not offered the opportunity to do so. On September 13, Williams was injured and transferred to the Health Care Unit, where he remained until September 20. Upon his release he was returned to the Segregation Unit, where he remained until October 7, 1993.[2] Williams claims that he was held in the Segregation Unit without due process for nineteen days (the period between September 20 and October 7).[3]

■■■ When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981)). A prisoner has no liberty interest in remaining in the general prison population. *Hewitt v. Helms*, 459 U.S. 460, 467–68, 103 S.Ct. 864, 868–70, 74 L.Ed.2d 675 (1983); *Meriwether v. Faulkner*, 821 F.2d 408, 414 (7th Cir.), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); *see also Sandin v. Conner*, —— U.S. ——, ——– ——, 115 S.Ct. 2293, 2300–01, 132 L.Ed.2d 418 (1995). In fact, absent a constitutional, statutory, or regulatory bar, "a prisoner may be transferred for any reason, or for no reason at all." *Williams v. Faulkner*, 837

---

1. In the district court the named defendants were: Salvador A. Godinez, Warden of Stateville during the alleged events; James Schomig, Assistant Warden of Operations; Anthony Ramos, Manager of the Segregation Unit; Correctional Lieutenant Morgan; Correctional Officer Samuels; Theopolas Smith, Protective Custody Unit Superintendent; and Correctional Captain Robert Griffen. On appeal, only Ramos is involved with the due process claim, and only Smith and Griffen with the Eighth Amendment claim.

2. On October 7, 1993, Williams was transferred to the Protective Custody Unit, and the events

giving rise to the Eighth Amendment claim took place.

3. Although Williams seems to contend he was in segregation status even while in the Health Care Unit, his contention that he was held without due process for nineteen days can be true only if we exclude the time Williams spent in the Health Care Unit. Additionally, the period between September 20 and October 7 does not total nineteen days. Because our ruling does not depend on pinpointing the exact dates Williams spent in segregation, we ignore these anomalies and proceed with Williams's claim as he states it.

F.2d 304, 309 (7th Cir.1988), *aff'd sub nom. Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Therefore, if the defendants are correct, Williams would have no liberty interest because he was in administrative or investigatory, not disciplinary, segregation.

Williams argues, however, that he was in disciplinary segregation, and that the district court failed to recognize the liberty interest afforded him by Illinois state regulations that govern prison disciplinary procedures. Specifically, he claims that Illinois law permits a maximum of fifteen days in segregation as punishment for disobeying a direct order, and that defendant Ramos held him in segregation beyond that time. This argument is countered by the recent Supreme Court case of *Sandin v. Conner,* — U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), which shifts the creation of liberty interests away from the language of regulations and toward the nature of the deprivation a prisoner suffers.

The Due Process Clause does not necessarily protect prisoners against the imposition of disciplinary segregation. *Id.* at ——–——, 115 S.Ct. at 2300–01. *Sandin* recognizes that a state may create a liberty interest, but limits such state-created liberty interests to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at ——, 115 S.Ct. at 2300.

▮ Thus, in the disciplinary segregation context, there is no liberty interest without an "atypical, significant" deprivation. *Id.* In *Sandin,* the Supreme Court held that an inmate (Conner) who received as punishment thirty days in segregation did not establish a liberty interest sufficient to invoke a right to

due process. It relied upon three factors in determining that Conner possessed no liberty interest: 1) disciplinary segregation was little different from discretionary forms of segregation; 2) comparison between Conner's confinement and conditions in the general population showed that Conner suffered no "major disruption in his environment"; and 3) the length of Conner's sentence was not affected. *Id.* at ——, 115 S.Ct. at 2301.

▮ The essential facts of this case as Williams states them are virtually indistinguishable from *Sandin.* Williams claims that, in violation of state procedures, he was held in disciplinary segregation for nineteen days. Like the Supreme Court in *Sandin,* under these circumstances we find no "atypical, significant deprivation," and thus no liberty interest.

Williams argues that his confinement was significantly more onerous than life in the general population. He says that he was locked in a closed-front cell twenty-four hours a day, he was not allowed to participate in activities available to the general population or non-segregated inmates housed in the same area, he was handcuffed whenever he left his cell,[4] and he lacked much contact with other inmates or staff. We do not believe, however, that his catalogue of harms greatly exceeds what one could expect from prison life generally,[5] as "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, 'a retraction justified by the considerations underlying our penal system.'" *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Moreover, previously Williams, as he admits, would have refused to leave the Segregation Unit, and he neglects to tell us how the conditions he voluntarily accepted in August and early September were different from or

4. Williams lists as examples showers, medical screening, Health Care Unit visits, internal affairs visits, and recreational yard participation. This list in itself, we believe, shows that he was not denied at least some of the amenities of prison life.

5. Also, we note that Illinois regulations prescribe that persons in disciplinary segregation may continue involvement in prison programs, receive

some outdoor exercise, have limited telephone privileges, are permitted reading materials and access to library materials, receive periodic visits from medical staff and clergymen, receive visitors, and generally have the same rights to personal property, commissary privileges, mail service, and comparable food. 20 Ill.Admin.Code § 504.620.

better than the conditions that prevailed during the period of which he complains. As the Supreme Court noted in *Sandin,* "Conner's own expectations have at times reflected a personal preference for the quietude of the Special Holding Unit. Although we do not think a prisoner's subjective expectations dispositive of the liberty interest analysis, it does provide some evidence that the conditions suffered were expected within the contour of the actual sentence imposed." *Id.* at ——, 115 S.Ct. at 2301 n. 9. Furthermore, there is no indication that persons in disciplinary segregation receive treatment substantially different than that given persons in discretionary types of segregation. *See* 20 Ill.Admin.Code § 504.630 (Investigative Confinement), § 504.660 (Administrative Detention) (both referring to disciplinary confinement standards as benchmarks). Finally, the length of Williams's sentence was not affected.

Where there is no liberty interest, there can be no due process violation. Because the defendants must prevail as a matter of law, summary judgment was proper.

## II. Eighth Amendment

■■■ The district court dismissed Williams's Eighth Amendment claim for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We review such a dismissal de novo. *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir.1995). We accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Arazie v. Mullane,* 2 F.3d 1456, 1465 (7th Cir.1993). The complaint should not be dismissed unless "it appears beyond doubt that the [non-movant] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

■■■ Williams was transferred from the Segregation Unit to the Protective Custody Unit on October 7, 1993. Upon his arrival, he showed to defendants Smith and Griffen a medical certificate which stated that Williams should be assigned a lower bunk.[6] There were no available low bunks in the unit, and defendants refused to reassign another inmate so that Williams could have a low bunk. When Williams protested, he was told that he could either accept the offered cell assignment or be returned to the Segregation Unit. He refused the cell assignment. Williams maintains that, by refusing to assign him a low bunk, defendants have demonstrated deliberate indifference to his serious medical need. We do not believe that the defendants' conduct rises to the level of an Eighth Amendment violation.

■■■ The Eighth Amendment imposes upon prison officials a duty to maintain "humane conditions of confinement," including adequate food, clothing, shelter, and medical care. *Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). To establish an Eighth Amendment violation based on inadequate medical care, a plaintiff must show that 1) the alleged deprivation is sufficiently serious, and 2) the officials acted with deliberate indifference to the inmate's health or safety. *Id.* at ——, 114 S.Ct. at 1977. Prison guards' intentional interference with a prescribed treatment may constitute indifference, *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976), but *Farmer* requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* —— U.S. at ——, 114 S.Ct. at 1979.

Williams argues that his serious medical need requires a low bunk. He has not, however, been deprived of a low bunk. Further, Williams fails to show that the defendants acted with knowledge that they caused him a serious risk. Essentially, the defendants offered Williams a choice: either accept an upper bunk in the Protective Custody unit, or return to a low bunk in the Segregation Unit. Defendants did not cause Williams needless pain and suffering by forcing him to

---

**6.** The certificate stated that Williams had a condition which made it more likely that he could fall out of an upper bunk and be injured. Williams's district court complaint also seems to be based upon that condition. In this Court, however, Williams states that a permanent injury to his hand makes it painful for him to climb into an upper bunk.

accept an upper bunk. They did not place him in an impossible situation in which he could not avoid pain or permanent injury. *See, e.g., Hughes v. Joliet Correctional Center,* 931 F.2d 425, 427–28 (7th Cir.1991) (medical staff removed patient's crutches and leg braces and ordered his bed moved away from the toilet so he would have to walk). They simply would not offer him a lower bunk in his preferred living situation, an action which does not rise to a constitutional violation. Because Williams cannot show that he was deprived of medically recommended treatment he fails to state an Eighth Amendment claim.

### III. Motion to Strike Reply Brief

The defendants move to strike Williams's reply brief because, although it was served upon defendants, it has never been filed with this Court. In view of our decision, we deny the motion as moot.

AFFIRMED.