81 F.3d 164
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Vances H. SMITH, Plaintiff-Appellant,
v.
Gary R. McCAUGHTRY, Lynn Oestreich, and Patricia Garro,
Defendants-Appellees.
Vances H. SMITH, Plaintiff-Appellant,
v.
Gary R. McCAUGHTRY and Lynn Oestreich, Defendants-Appellees.
 Nos. 94-2743, 94-2930 and 95-2609.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 14, 1996.*
Decided March 19, 1996.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin, No. 92 C 790; Aaron E. Goodstein, Magistrate Judge.
 Appeal from the United States District Court for the Eastern District of Wisconsin, No. 93 C 0971; J.P. Stadtmueller, Chief Judge.
 E.D.Wis.
 Nos. 94-2743, 94-2930 AFFIRMED; No. 95-2609 REVERSED.
 Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Vances Smith, incarcerated at Wisconsin's Waupun Correctional Institution, appeals the decisions in favor of defendants in two civil rights actions. 42 U.S.C. § 1983. In Nos. 94-2743 and 94-2930,[1] the magistrate judge[2] granted defendants' motion for summary judgment on Smith's action alleging violations of his Eighth and Fourteenth Amendment rights. In No. 95-2609, the district court granted defendants' motion to dismiss Smith's Fourteenth Amendment claim for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Having reviewed both cases de novo, Williams v. Ramos, 71 F.3d 1246, 1248, 1250 (7th Cir.1995) (per curiam), we affirm Nos. 94-2743 and 94-2930, but reverse No. 95-2609 and remand for further proceedings.
 
 
 2
 Smith's complaint in Nos. 94-2743 and 94-2930 stems from the prison's use of a disciplinary "Step Program," in which inmates who have been disciplined and placed in segregation as punishment move through graded levels to acquire increased privileges and responsibility and possibly early release from segregation. Inmates serving time in adjustment segregation in the Adjustment Center are in Step 1. In the Adjustment Center, cells measure 8' by 11' and have a solid door with a 12"' window opened only for communication with the inmate. Inmates in adjustment segregation are not allowed to smoke and their personal property is strictly limited. After serving his adjustment segregation time, the inmate advances to program segregation status, Step 2. Inmates remain in the same cell but receive additional privileges, including a half-hour of out-of-cell exercise up to five times per week, access to the Adjustment Center satellite law library, and possession of in-cell library books.
 
 
 3
 An inmate's conduct is reviewed at least every thirty days to determine whether he should remain in Step 2 or proceed to Step 3. The Adjustment Committee evaluates such criteria as the inmate's interaction with other inmates and staff, personal hygiene and cell upkeep, and ability to follow rules and procedures. The warden reviews the evaluation and decides whether to transfer the inmate out of program segregation status. When an inmate achieves Step 3, he may be transferred from the Adjustment Center to the North Cell Hall Program Segregation Unit as room becomes available. There the inmate is permitted increased privileges such as personal clothing, electronics, more visiting hours, personal phone calls, and opportunities to participate in treatment activities outside the building.
 
 
 4
 Smith was placed in the Step Program on two occasions. The first commenced on July 14, 1992, when he was punished for a major rule infraction with four days of adjustment segregation and sixty days of program segregation;[3] he was placed in Adjustment Center Cell 58 to serve his punishment. On July 18 his status changed to program segregation, but he remained in Cell 58 and was accorded increased privileges. On July 21 he was returned to adjustment segregation status following a major rule infraction; after he served four days of adjustment segregation, he was placed on program segregation status. On July 31 he was transferred to the North Cell Hall. Thus, Smith spent approximately seventeen days in Cell 58. The second occasion occurred when Smith returned to the Adjustment Center on October 2 and was placed in Cell 54 to serve three days adjustment segregation and ninety days program segregation for another major rule infraction. He remained in program segregation status from October 5 until he was demoted to adjustment segregation status for a major rule infraction on October 29. On November 2 he regained program segregation status, and on November 18 he was transferred to North Cell Hall. Smith spent approximately forty-seven days in Cell 54.
 
 
 5
 In No. 95-2609, Smith focuses specifically upon the hearing held July 14, 1992, in which defendant Oestreich found him guilty of violating Department of Corrections Rule 303.36(2), which states, "Any inmate who knowingly mails or attempts to mail any letter or parcel on which is affixed a canceled postage stamp is guilty of an offense." The evidence presented at the hearing included the conduct report in which an officer described finding in Smith's cell seventeen canceled stamps (some of which had been concealed) and envelopes from which they had been removed; the stamps and envelopes themselves; and Smith's statement that his niece collected stamps. After defendant McCaughtry affirmed Oestreich's decision, a Wisconsin state court, on writ on certiorari, reversed the decision and held that:
 
 
 6
 This Court finds that before the respondent and/or its agents can find a prisoner guilty of violating § DOC 303.36(2) the respondent must have some evidence that the inmate has attempted to mail a letter or a parcel on which is affixed a cancelled postage stamp. In other words, there must be some evidence to suggest that the petitioner herein was intentionally using these stamps in an unauthorized manner. There is no such evidence of this in the record. The only evidence in the record is that the inmate had cancelled postage stamps in his cell.
 
 
 7
 Wisconsin ex rel. Smith v. McCaughtry, No. 92-CV-570 (Dodge Co. Cir.Ct. May 4, 1993) (unpublished). The court ordered the violation expunged from Smith's record.
 
 I. Nos. 94-2743 & 94-2930
 A. Due Process
 
 8
 Smith argues that these disciplinary measures violated his due process rights because (1) he has a state-created liberty interest in being released from adjustment segregation status after eight days, and (2) he did not receive any procedural protections when being transferred between steps. We affirm the magistrate judge's rejection of both grounds.
 
 
 9
 First, Smith contends that, because the conditions of confinement differ little, "program segregation" is really "adjustment segregation." He relies upon the mandatory language used in Wisconsin's Department of Corrections rules to establish a protected liberty interest in being released promptly from adjustment segregation. Thus, he claims, the seventeen days he spent in Cell 58, and forty-seven days in Cell 54, violated his due process rights to timely release from adjustment segregation.
 
 
 10
 This argument must be rejected under the Supreme Court's ruling in Sandin v. Conner, 115 S.Ct. 2293, 2300 (1995), which makes it clear that inmates may no longer rely solely upon the use of mandatory language to identify a protected liberty interest. Further, there is no indication that Smith's confinement in Steps 1 and 2 violated the Wisconsin rules: both the rules and Waupun's Step Program distinguish between adjustment segregation and program segregation by the amount of privileges accorded inmates rather than the specific location of their confinement. See Wis.Admin.Code DOC §§ 303.69, 303.70; R. 30 Ex. A at 10. Smith does not contend that he has not received the specified privileges, just that the privileges are not sufficient. That, however, is a matter for the Wisconsin legislature, not for this court. See Smith v. Shettle, 946 F.2d 1250, 1252 (7th Cir.1991).
 
 
 11
 In his second claim Smith challenges the procedures used to transfer inmates between steps. He contends that, because both Step 2 and Step 1 constitute adjustment segregation, the monthly reviews by the Adjustment Committee and decision by the warden whether to keep him in Step 2 or promote him to Step 3 are insufficient to protect his liberty interest in being free from adjustment segregation. As we have already indicated, however, even if we had identified a liberty interest in being free from adjustment segregation, Step 2 program segregation is not adjustment segregation. Smith further contends that the mandatory language of the Step Program itself confers upon him a liberty interest in being promoted to Step 3. Again, however, Sandin forbids relying solely upon the use of mandatory language. It limits state-created liberty interests to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 115 S.Ct. at 2300. The progression of steps within a constitutionally-imposed disciplinary sentence does not implicate such a hardship.
 
 B. Eighth Amendment
 
 12
 Smith also contends that his confinement conditions in the Adjustment Center violate the Eighth Amendment's prohibition against cruel and unusual punishment. He claims that inmates are retained in isolation cells too long and consequently suffer psychological damage from "sensory deprivation, lack of mental stimulization [sic], and lack of exercise." App. Brief at 5.[4]
 
 
 13
 The Eighth Amendment, through the Due Process Clause of the Fourteenth Amendment, imposes upon state prison officials a duty to maintain "humane conditions of confinement," including adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 114 S.Ct. 1970, 1976 (1994). A plaintiff claiming a violation of the Eighth Amendment must satisfy both an objective test (whether the conditions can be considered cruel and unusual) and a subjective test (whether the defendants acted with a culpable state of mind). Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991); McNeil v. Lane, 16 F.3d 123, 124 (7th Cir.1994). We need not address the objective component where the plaintiff fails to establish the subjective component. Lunsford v. Bennett, 17 F.3d 1574, 1579 (7th Cir.1994).
 
 
 14
 Under the subjective test, a prison official is liable for Eighth Amendment violations when he acts with "deliberate indifference," meaning that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S.Ct. at 1979. Here, Smith offers the general assertion that he has experienced "recurrent Vietnam flash backs, hallucinations, dissociative features, including sudden recovery as from dreams with subsequent amnesia for the events of the psychosis, and other severe psychological problems." App. Brief at 3. He also asserts that he has personal knowledge of three inmates who have committed suicide because of the conditions in the Adjustment Center. Id. He has failed, however, to show that these particular defendants knew and acted with deliberate indifference to the possibility that he and other inmates may have developed severe psychological problems from the conditions in the Adjustment Center.
 
 
 15
 Moreover, Smith does not present evidence beyond his conclusory allegations. He does not establish that these conditions violate the objective component of the Eighth Amendment test, that the conditions in the Adjustment Center deprived him of "the minimal civilized nature of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). He complains about the lack of privileges available to inmates in the Adjustment Center, but "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. Only one allegation, that of lack of out-of-cell exercise, approaches the denial of a basic human need. We have previously recognized, however, that inmates confined for short periods of time without out-of-cell exercise opportunities do not necessarily have a constitutional claim. Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir.1988). Rather, lack of exercise rises to a constitutional violation only where "movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." French v. Owens, 777 F.2d 1250, 1255 (7th Cir.1985). Smith, who spent at most forty-seven days in the Adjustment Center, has not shown such a deprivation.
 
 
 16
 Because Smith meets neither the subjective nor the objective component of the test for an Eighth Amendment violation, summary judgment was properly granted to defendants.
 
 II. No. 95-2609
 
 17
 Smith further argues that the defendants at the July 14, 1992, hearing violated his substantive due process rights to be found guilty only upon a showing of evidence that meets minimal constitutional requirements. Heck v. Humphrey, 114 S.Ct. 2364 (1994), has no affect on this § 1983 suit because a Wisconsin state court has expunged the proceeding from Smith's record. Cf. Miller v. Indiana Dept. of Corrections, No. 93-1621, slip op. at 3 (7th Cir. Feb. 5, 1996).
 
 
 18
 The substantive aspect of the Due Process Clause protects against "certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' " Rowe v. DeBruyn, 17 F.3d 1047, 1050 (7th Cir.1994) (citing Daniels v. Williams, 474 U.S. 327, 337-38 (1986) (Stevens, J., concurring)), cert. denied, 115 S.Ct. 508 (1994). A prison disciplinary decision must be supported by "some evidence." Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 447 (1985). We believe that Smith correctly argued that, because the state must satisfy the "some evidence" standard, a finding of guilt based upon no evidence is a substantive due process violation. Such a violation is complete and actionable under § 1983 when the wrongful action is taken. Rowe, 17 F.3d at 1050.
 
 
 19
 Here, the evidence presented at the hearing included the stamps and envelopes from which they had been removed, a report documenting officials' discovery of the stamps, and Smith's statement that his niece collected stamps. Wisconsin ex rel. Smith v. McCaughtry, No. 92-CV-570, 3 (Dodge Co. Cir.Ct. May 4, 1993) (unpublished). The district court concluded that the stamps and the fact that they had been concealed constituted "some evidence" of Smith's guilt.
 
 
 20
 The rule, however, states that an inmate who "knowingly mails or attempts to mail any letter or parcel on which is affixed a canceled postage stamp" has committed an offense (emphasis added). "Although 'some evidence' is not much, and obviously ranks far below what would be sufficient in a criminal or civil trial, it still must point to the accused's guilt." Lenea v. Lane, 882 F.2d 1171, 1175 (7th Cir.1989). In Lenea, this court affirmed the district court's reversal of a prison disciplinary action: "If this 'evidence' proves anything, it proves only that Plaintiff had the opportunity to aid an escape. It is not even a modicum of evidence that he did so." Id. at 1175-76. See also Zavaro v. Coughlin, 970 F.2d 1148, 1152-53 (2d Cir.1992) (improper finding of guilt where evidence merely established that inmate was present at scene of riot, not that he participated in it). Similarly, the stamps, although they might be some evidence that Smith had the opportunity to or perhaps even planned to affix canceled stamps to letters, are not evidence that Smith either mailed or attempted to mail a letter with a canceled stamp. Although the fact that the stamps were concealed raises suspicion, possession of a canceled stamp, even a concealed canceled stamp, is not prohibited by the rule. As the Wisconsin state court recognized, there was no evidence that Smith violated this rule. Consequently, this case is reversed and remanded for further proceedings.
 
 
 21
 Nos. 94-2743 and 94-2930 are AFFIRMED;
 
 
 22
 No. 95-2609 is REVERSED and REMANDED.
 
 
 
 *
 After an examination of the briefs and the records, we have concluded that oral argument is unnecessary for either appeal. Accordingly, appellant's request for oral argument in No. 95-2609 is denied and the appeals are submitted on the briefs and the records. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Nos. 94-2743 and 94-2930 are appeals from one case in the district court. Smith's original notice of appeal, which was premature because of the timely filing of a Rule 59 motion, was assigned No. 94-2743. After the district court disposed of the motion Smith filed a second notice of appeal (No. 94-2930). The two appeals were consolidated
 
 
 [2]
 Both parties consented to having the case heard by a magistrate judge pursuant to 28 U.S.C. § 636
 
 
 [3]
 This finding of guilt and punishment was subsequently expunged by order of a Wisconsin state court
 
 
 [4]
 In the district court Smith also argued that defendants violated his Eighth Amendment rights because they denied him access to personal care products and were indifferent to his medical needs for failing to treat his psychological problems. R. 18 at 7. He does not present these arguments on appeal