DeAngelo JONES, Plaintiff,

v.

Victoria Coleman RUSSELL, Jerome H. Springborn, George E. DeTella and Assistant Warden Schomig, Defendants.

No. 96 C 3699.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 26, 1996.

DeAngelo M. Jones, Menard, IL, pro se.

Susan Takata O'Leary, Illinois Department of Corrections, Chicago, IL, for Victoria Coleman Russell, Jerome H. Springborn, George E. DeTella, Asst. Warden Schomig.

*Memorandum Opinion And Order*

MORAN, District Judge.

Plaintiff DeAngelo Jones, a prisoner in the custody of the Illinois Department of Corrections (IDOC) at Menard Correctional Center, has filed a complaint under 42 U.S.C. § 1983 against Warden DeTella, Assistant Wardens Schomig and Springborn, and Superintendent Russell, all employees of IDOC at Stateville Correctional Center where Jones was formerly confined. Jones seeks leave to proceed in forma pauperis. After being informed of the provisions of the Prison Litigation Reform Act of 1996 (PLRA) requiring prisoners to pay the full filing fee, Jones elected to proceed.

Under 28 U.S.C. § 1915A, part of the PLRA, the court is required to review complaints filed by a prisoners against officers or employees of governmental entities and dismiss any portion of the complaint it finds frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. While the former 28 U.S.C. § 1915(d) only permitted the court to dismiss claims *sua sponte* if the court found them frivolous or malicious, the new Section 1915A directs the court, in effect, to make and rule on its own motion to dismiss the complaint prior to service.

█ The court presumes that in determining whether a complaint states a claim for purposes of 28 U.S.C. § 1915A it is to apply the well-known standards applied in addressing an adversarial motion to dismiss under Rule 12(b)(6). The court must accept as true the allegations of the complaint and the inferences that may be reasonably drawn from them. *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir.1992), *cert. denied*, 508 U.S. 940, 113 S.Ct. 2417, 124 L.Ed.2d 639 (1993). The allegations of a pro se complaint are to be liberally construed, *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir.1996), and a motion to dismiss may be granted only if the court concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

## ALLEGATIONS OF THE COMPLAINT

Jones alleges that on May 2, 1996, he was told to pack his property for transfer from H–House, the protective custody unit, to B–West, a general population cellhouse. He states that at H–House he had been classified as "Group IV, kick-out," i.e., an inmate whose request for protective custody has been denied but who is allowed to stay in protective custody while that decision is being appealed to the Administrative Review Board. See Title 20 Ill. Admin. Code §§ 501.320, 504.870.

When Jones arrived at B–West, he told correctional officers that he wanted to sign back into protective custody because his life would be in danger in B–West. Captain Laskey and Captain J. Johnson were called; when they arrived, Jones told Laskey that he wanted to sign into protective custody. Laskey called defendant Russell, the H–House cellhouse superintendent, to tell her that

Jones was being sent to protective custody. Russell refused to let Jones back into protective custody, saying that he was an "A.R.B. (Administrative Review Board) lockout" and could not sign back in. After making some calls, Laskey told Jones that he had contacted Assistant Warden Springborn, who had denied permission for Jones to reenter protective custody.

Jones refused to stay in B–West and was taken to disciplinary segregation for refusing his housing assignment. He alleges that he would have been risking his life had he obeyed orders and not gone to segregation. Jones states that he filed a grievance but received no response. He seeks compensation for his allegedly wrongful placement in segregation, including the "state pay" he would have received.

## ANALYSIS

▮ The defendants are not liable for refusing Jones's request for protective custody. Prison officials have a duty to protect inmates, but prisoners are not entitled to be housed in protective custody on demand. A prison official may be held liable under the Eighth Amendment for failing to protect inmates "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 1984, 128 L.Ed.2d 811 (1994). Obviously, the defendant's knowledge is critical. *Jelinek v. Greer*, 90 F.3d 242, 244 (7th Cir.1996). Is it a reasonable inference from the allegations of the complaint that the defendants knew of a substantial risk of serious harm to Jones?

As to Warden DeTella and Assistant Warden Schomig, the answer is simple. The complaint does not allege that they either knew anything or did anything; apparently they were named solely because of the positions they hold. As to Russell and Springborn, Jones alleges only that they were told that Jones wanted back into protective custody. We can stretch that into an inference that Springborn and Russell knew from Jones's request that *Jones* believed he was at risk. Given the circumstances alleged in the complaint, that does not translate into knowledge that a serious risk actually existed.

Jones does not allege that Springborn and Russell were aware of a history of assaults or threats against him, or even that there was such a history. Nor does he allege that he has any personal characteristics from which they would have inferred that he is particularly vulnerable. On the other hand, Jones alleges that Russell knew, and by inference Springborn also knew, that the Administrative Review Board had affirmed the determination that Jones did *not* need protective custody. Given these allegations, Jones has not stated a claim based on the denial of protective custody.

Jones also claims a denial of due process, presumably for being put in disciplinary segregation for refusing to stay in B–West. But the complaint does not allege that any of the defendants were responsible for imposing that punishment. In any event, prisoners have no constitutionally protected liberty interest in avoiding short periods of confinement in disciplinary segregation. *Williams v. Ramos*, 71 F.3d 1246 (7th Cir.1995). Jones also claims cruel and unusual punishment and denial of equal protection, but there is no basis in the complaint for either claim.

## CONCLUSION

Leave to file in forma pauperis is denied and the complaint is dismissed pursuant to 28 U.S.C. § 1915A. The PLRA provides that prisoners filing suit in federal court must now pay the full filing fee; if not initially, then in installments. The court is required to assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of the average monthly deposits to the prisoner's account or the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint. Thereafter the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. The institution having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(1).

Records submitted with Jones's in forma pauperis application appear to show that for the six-month period December 1995—May 1996 Jones's trust fund had a negative balance. It is impossible to determine his average monthly income for this period. Jones submitted copies of his requests, and it appears that he is not responsible for the inadequate documentation. As it appears that Jones has no available funds, the initial payment is waived. The trust fund officer at the correctional facility where Jones is confined is authorized to collect monthly payments from Jones's trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments collected from Jones's trust fund account shall be forwarded to the clerk of court each time the amount in the account exceeds $10 until the full $120 filing fee is paid. All payments shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Il. 60604, attn: Fiscal Dept., and shall clearly identify Jones's name and the case number assigned to this action. The clerk shall send a copy of this order to the trust fund officer at Menard Correctional Center.