**Clifton ELY–EL # N–18287, Plaintiff,**

v.

**Salvador GODINEZ, et al., Defendants.**

**No. 96 C 1677.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 3, 1998.

---

Dean C. Morask, Chicago, IL, for Plaintiff.

Richard J. Siegel, Attorney General Ryan's Office, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Clifton Ely–El ("Ely–El," who originally brought suit as a pro se litigant but for whom this Court then appointed pro bono publico counsel [1]) has claimed violations of his constitutional rights by several of the prison personnel at Stateville Correctional Center ("Stateville," where Ely–El was incarcerated), assertedly sufficient to be actionable under 42 U.S.C. § 1983 ("Section 1983"). All defendants have moved under Fed.R.Civ.P. ("Rule") 56 for summary judgment, supporting their motion with materials in compliance with Rule 56 and with this District Court's General Rule ("GR") 12(M).[2] Ely–El has

responded in kind, including full compliance with GR 12(N), and that has been followed by defendants' final submission.

With those filings in hand, defendants' motion has become ripe for decision. For the reasons stated in this memorandum opinion and order, their motion is granted and this action is dismissed with prejudice.

### Facts

In light of the grounds for disposition set out in the substantive discussion here, only a brief factual summary is needed. What follows of course complies with the operative summary judgment standard that takes the factual submissions in a light most favorable to Rule 56 nonmovant Ely–El, with all reasonable inferences (though not every conceivable inference) drawn in his favor (*St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116 F.3d 262, 265 n. 2 (7th Cir.1997)).

Because six "shanks" (home-made knives) were found in a pipe chase that was shared by the cell occupied by Ely–El and the adjacent cell, the prison authorities' institution of a grievance against Ely–El and others having access to that pipe chase was processed in accordance with Section 504A, § 504.20(e) of the Illinois Department of Corrections Rules. That section provides that every inmate is presumed to be responsible for any contraband located within areas under the inmate's control (which areas are defined to include plumbing to which the inmate's cell has access). After a hearing of that grievance Ely–El was confined to segregation for a period of some 4-1/2 months, but later administrative action resulted in the rescinding of that discipline and the restoration of Ely–El's good time credits that he had lost because of the incident.

During the time frame that Ely–El was in segregation, all or part of Stateville was on institutional lockdown for a total of 90 days

1. After the originally appointed lawyer had to withdraw for personal reasons, this Court appointed trial bar member Dean Morask, Esq. ("Morask") to represent Ely–El. It is clearly in order for this Court to extend its special appreciation to Morask for his efforts on Ely–El's behalf, which were exercised in the best traditions of the bar. Ely–El's lack of substantive success in this action is in no way attributable to Morask, who certainly put Ely–El's best legal foot forward in the submissions on his behalf.

2. GR 12(M) and 12(N) were adopted to facilitate the identification of any genuine issues of material fact (hence calling for the denial of any Rule 56 motion), or alternatively to demonstrate the absence of any such issues (thus calling for the granting of summary judgment under Rule 56).

(amounting to about two-thirds of the period that Ely–El was in segregation). That included (1) a 53–day period during which the entire facility was on lockdown status and (2) another 37 days during which one or more living units within the institution were on lockdown. All of the restrictions that apply to anyone in disciplinary segregation are also imposed on Stateville prisoners who are in administrative detention at any time, and during lockdown periods the identical restrictions are imposed on all prisoners, including those in the general prison population as well as those in disciplinary or administrative segregation (or where lockdown does not extend to the entire institution, then to all prisoners within the lockdown area).

Finally, Ely–El complains of a skin rash from which he suffered during the time frame when he was in segregation. But the medical records at Stateville (including the affidavit of Dr. Willard Elyea and its attachments) reflect (1) that Ely–El received treatment for that condition, (2) that the treatment, his therapeutic response to medication and the subsequent diagnosis by the dermatologist at Pontiac Correctional Center all confirm that he had been subject to an inflammatory disease and not—as he claimed—an infectious skin disease, (3) that the condition was not contagious and (4) that it was thus not acquired from the environmental sources asserted by Ely–El in his Complaint.

*Claimed Constitutional Violations*

■ As for Ely–El's claim that his incarceration in segregation was unjustified and amounted to a violation of his rights under the Due Process Clause, his counsel has properly acknowledged that the statement of operative principles has been definitively summarized in these terms in *Sandin v. Conner*, 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (footnote and most citations omitted):

> The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* [*v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ] and *Meachum* [*v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) ]. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Morask urges on Ely–El's behalf that both *Sandin* and our Court of Appeals' post-*Sandin* opinion in *Williams v. Ramos*, 71 F.3d 1246, 1249 (7th Cir.1995) are sufficiently distinguishable from Ely–El's situation to save his claim from summary judgment dismissal. But the even more recent Seventh Circuit decision in *Thomas v. Ramos*, 130 F.3d 754, 761–62 (7th Cir.1997) is far closer than those cases to Ely–El's circumstances—not only in terms of the materially-longer period of time in disciplinary segregation that was imposed in *Thomas*, but also because the period involved was "relatively short" in the context of the prisoner's total prison sentence (something that is also true of Ely–El) and because (as here) the material period of time when a lockdown condition at the institution was under lockdown tended to minimize any contrast between the conditions to which the prisoner was subjected and those generally applicable to the prison population.

It must be concluded in light of *Sandin*, as later construed in *Williams* and particularly in *Thomas*, that Ely–El did not suffer "atypical and significant hardship ... in relation to the ordinary incidents of prison life." And that being so, no loss of a liberty interest was implicated on Ely–El's part, thus eliminating any underpinning for a due process claim.

That dispositive conclusion moots the question whether in any event Salvador Godinez (then the Stateville Superintendent) would be liable under Section 1983 for the actions of lower-level personnel. It does however support the alternatively dispositive claims of qualified immunity advanced by all defendants: Even if the short step from the *Thomas* facts to Ely–El's precise situation were somehow viewed as calling for a closer look (a conclusion that this Court rejects),

the constitutional right claimed by Ely–El (an asserted right to his not being assigned to segregation under the circumstances) could not be said to have been "clearly established" at the time that defendants acted (see *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

■ Finally, only a word or two needs to be said about Ely–El's claim of an Eighth Amendment violation.[3] In that respect the constitutional standard of "deliberate indifference to serious medical needs" originally announced in *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) has been more recently refined and applied in such cases as *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) and *Gutierrez v. Peters,* 111 F.3d 1364, 1368–73 (7th Cir.1997). Purely and simply, Ely–El flat out fails that test, even as generously as it has been framed in *Gutierrez.*

### Conclusion

There is no genuine issue of material fact, and all defendants are entitled to a judgment as a matter of law. Both Ely–El's Complaint and this action are dismissed with prejudice.

---

3. As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).